IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CENTIMARK CORPORATION,          )
                                )
              Plaintiff,        )
                                )
    vs.                         )  Civil Action No. 11-1137
                                )
JON A. JACOBSEN,                )
                                )
              Defendant.        )

## MEMORANDUM OPINION

Pending before the Court is a motion by Defendant Jon A. Jacobsen ("Jacobsen"), seeking to transfer venue of this matter to the U.S. District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a) (Doc. No. 19, "Motion.") Jacobsen's main argument is that the transfer would benefit the parties and witnesses who primarily live and work in the State of Georgia. CentiMark Corporation ("CentiMark"), a nationwide roofing contractor, opposes the transfer, relying primarily on the forum selection clause of a 1996 agreement between itself and Jacobsen which provides that any legal action arising out of the agreement would be brought in a state or federal court sitting in Washington County, Pennsylvania. For the reasons which follow, Jacobsen's motion is denied.

## I.  BACKGROUND

The factual and procedural history of this case is set out in detail in the Court's Memorandum Opinion dated November 29, 2011, denying CentiMark's motion for a temporary restraining order and/or preliminary injunction.  Suffice it to say that on September 5, 1996, as a condition of his initial employment with CentiMark, Jacobsen signed an employment agreement ("the 1996 Agreement") which contained the following provision:

> Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and Employee [i.e., Jacobsen] hereby irrevocably submits to the personal jurisdiction of the courts sitting in Washington County, Pennsylvania in any action or proceeding arising out of, or relating to, this Agreement. . . .Employee further irrevocably waives any objection which he/she now or  hereafter may have to the laying of venue of any action or proceeding arising out of, or relating, to this Agreement brought in said courts. Jurisdiction and venue of all causes of action arising out of, or related to, this Employment Agreement shall be exclusively vested in the state or federal courts in Washington County, Pennsylvania.

(Complaint, Exh. A, § 7.06, emphasis in original.)

The 1996 Agreement included a cover page entitled "IMPORTANT NOTICE" which "strongly recommended" that Jacobsen review the content of the agreement with his attorney.  The choice of law and venue provision was explicitly identified as one of five items to which he would be bound upon signing the agreement.  The copy provided to the Court shows that Jacobsen did, in fact, initial each provision in recognition of the legal

2

obligations set out therein. Moreover, Jacobsen's signature appears on the 1996 Agreement under a sentence in bold capital letters stating "I HAVE NOT BEEN THREATENED OR COERCED IN ANY WAY AND AGREE THAT I HAVE BEEN ADVISED TO SEEK LEGAL COUNSEL." There is no evidence before the Court indicating whether Jacobsen sought legal advice before he signed.[1]

Jacobsen left CentiMark's employ in 2001, worked for three other companies in the roofing industry, and was ultimately re-hired in 2004; again, he entered into an employment agreement with the company ("the Employment Agreement.") The second agreement specifically incorporated Articles I through VII of the 1996 Agreement, and there were no modifications to the choice of law and venue provision in Section 7.06. A copy of the 1996 Agreement was attached to the Employment Agreement signed on August 30, 2004. (Complaint, Exh. A.) Jacobsen resigned from CentiMark on July 27, 2011, and accepted employment with yet another company in the roofing industry, Nations Roof South, LLC.

CentiMark filed suit in this Court on September 8, 2011, alleging that Jacobsen had breached the non-competition and non-disclosure provisions ("the restrictive covenants") of the Employment Agreement by working for Nations Roof South and was engaging in unfair competition. While CentiMark's motion for a

---

[1] Jacobsen has not argued that these are not his initials or signature.

3

temporary restraining order and/or preliminary injunction was pending, and before the parties could agree on a date for the related hearing, Jacobsen filed suit on September 19, 2011, in the Superior Court of Fulton County, Georgia, seeking a declaratory judgment that the restrictive covenants are overly broad, violate Georgia law and Georgia public policy, and therefore are unenforceable. (Doc. No. 1, Exh. A, Jacobsen v. CentiMark Corporation, CA No. 11-1270, "the Georgia Action.") CentiMark timely removed the suit to the United States District Court for the Northern District of Georgia pursuant 28 U.S.C. § 1441(a) and diversity jurisdiction under 28 U.S.C. § 1332. Jacobsen did not object to removal. On September 21, 2011, after the first day of the hearing in this matter had already taken place, Jacobsen filed a motion for a temporary restraining order in the Georgia Action, seeking to bar CentiMark from proceeding with the lawsuit filed in this Court. Before the Honorable Timothy C. Batten could rule on that motion, CentiMark filed a motion to dismiss or, alternatively, to transfer the case to this jurisdiction. (Georgia Action, Doc. No. 10.) Judge Batten denied the motion to dismiss but granted the motion to transfer pursuant to the "first filed rule" and the forum selection clause in Section 7.06 of the Employment Agreement. (Id., Doc. No. 14.) On November 7, 2011, at the request of the

4

parties, the Georgia Action was consolidated for all purposes
with the action originally brought by CentiMark in this Court.

## II. **STANDARD OF REVIEW; APPLICABLE LAW**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought." The purpose of
transferring venue under § 1404(a) "is to prevent the waste of
time, energy, and money and to protect litigants, witnesses and
the public against unnecessary inconvenience and expense." Van
Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation
omitted.) In determining if transfer of venue is appropriate,
"the district court is vested with a wide discretion."
CentiMark Corp. v. Saffold, CA No. 07-342, 2007 U.S. Dist. LEXIS
57772, *4 (W.D. Pa. Aug. 8, 2007), quoting Plum Tree, Inc. v.
Stockment, 488 F.2d 754, 756 (3d Cir. 1973). The burden of
showing a need for transfer is on the movant, here Defendant
Jacobsen. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879
(3d Cir. 1995).

A court considering a motion to transfer venue performs a
two-part analysis. First, the court must decide whether the
district to which the movant seeks to transfer the case has
proper jurisdiction and venue, i.e., could the case have been
brought in the transferee district in the first instance.

Lawrence v. Xerox Corp., 56 F. Supp.2d 442, 450-451 (D. N.J. 1999). Second, the court applies a number of public and private factors to determine which forum is most appropriate to consider the case. Id. The private interests to be considered include

(1) the plaintiff's choice of forum,

(2) the defendant's preferred forum,

(3) where the claim arose,

(4) the "convenience of the parties as indicated by their relative physical and financial condition,"

(5) the convenience of the witnesses to the extent they are unavailable for trial in one forum or the other, and

(6) the location of books and records and whether they will be unavailable in the alternative forum.

Jumara, 55 F.3d at 879-880; see also In re Amendt, No. 05-2458, 2006 U.S. App. LEXIS 3944, *8 (3d Cir. Feb. 16, 2006).

The public interests include

(1) the enforceability of the judgment,

(2) practical considerations that would make the trial easy, expeditious, or inexpensive,

(3) the relative administrative difficulty in the two fora resulting from court congestion,

(4) the "local interest in deciding local controversies at home,"

(5) the public policies of the fora, and

(6) the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, id.; Amendt, id.

Not all of these factors will apply in every instance and the court's analysis should be "flexible and individualized," based on the "unique facts of each case." Lawrence, 56 F. Supp.2d at 450; Wm. H. McGee & Co. v. United Arab Shipping Co., 6 F. Supp.2d 283, 288 (D. N.J. 1997), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). The movant has the burden of showing that the balance of private and public factors weighs strongly in favor of transfer. Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"); Measurement Specialities, Inc. v. Stayhealthy.com, 275 F. Supp.2d 638, 640 (E.D. Pa. 2003) ("a motion to transfer is not to be liberally granted.")

In a case such as this where a binding contract between the parties contains a forum selection clause, the court is to consider the effect of that clause as one factor in its analysis. Stewart Org., 487 U.S. at 29 ("The presence of a forum-selection clause. . .will be a significant factor that figures centrally in the district court's calculus" in resolving a motion brought under § 1404(a).) Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,

7

10, 15 (1972). Such a clause is deemed "unreasonable" when it has been procured by "fraud or overreaching," or if the party opposing transfer shows that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Id. at 15, 18.

## III. ANALYSIS

### A. Defendant's Arguments

In support of the Motion, Jacobsen has filed a declaration in which he avers the following:

He lives and works in the State of Georgia;

He has no contacts with the Commonwealth of Pennsylvania in his individual capacity;

John T. Godwin, the Executive Vice President of CentiMark ("Godwin"), who verified the complaint filed by CentiMark in this action and to whom Jacobsen personally resigned in July 2011 lives and works in the Northern District of Georgia;

According to information on its website, although headquartered in Pennsylvania, CentiMark is the largest commercial roofing company in North America with business in every state and offices located all over the country, including the Northern District of Georgia where Jacobsen and Godwin were employed;

Godwin is likely to be CentiMark's chief witness since he attested to the facts in the Complaint, was the person to whom Jacobsen resigned, and is familiar with the business of Nations Roof South;

Jacobsen's immediate supervisor, who is also a potential witness, lives and works in Colorado;

8

Nations Roof South, from whom records and witnesses
are likely to be sought by CentiMark, is located in
Georgia;

No witnesses appear to be located in Pennsylvania; and

It would be a financial hardship for him to litigate
in Pennsylvania due to the expenses of air travel,
hotel, and rental car.

(Motion, Exh. A, ¶¶ 1, 10-11, 13-15, 19, 23.)

In his brief in support of the Motion, Jacobsen argues that
the only reason CentiMark filed suit against him in this Court
is the forum selection clause in the 1996 Agreement.
(Defendant's Brief in Support of Motion Transfer Venue, Doc. No.
20, "Def.'s Brief," at 1.) Relying on the outcome of two other
suits filed by CentiMark in this forum, Jacobsen contends that
transfer of the case to the Northern District of Georgia is
clearly warranted for all three reasons stated in 28 U.S.C. §
1404(a) - the convenience of the parties, the convenience of the
witnesses, and the interests of justice. (Id. at 1-2, citing
CentiMark Corp. v. Saffold, supra (Lancaster, J.) ("Saffold"),
and an unpublished opinion in CentiMark Corp. v. Tecta America
Corp., CA No. 08-593 (reports and recommendations by Bissoon,
M.J., at Doc. No. 41, Oct. 6, 2008, and Doc. No. 45, Nov. 11,
2008, as affirmed by Standish, J. at Doc. No. 49, Dec. 18, 2008)
("Tecta America.")

In both cases cited by Jacobsen, Saffold and the individual
defendants in Tecta America, Vincent Vitek and Patrick Hansen,

9

had entered into employment agreements with CentiMark containing the exact same forum selection and choice of law provisions as Section 7.06 of Jacobsen's 1996 Agreement. In Saffold, Judge Lancaster reasoned that transfer was appropriate because CentiMark had offices in Illinois as well as Pennsylvania, the events giving rise to the claims occurred in Illinois, the defendant, his supervisor, and most witnesses were in that forum, and trying the case in Illinois would cause minimal, if any, inconvenience to CentiMark, but great inconvenience and expense to Saffold. (Def.'s Brief at 2-3.) In Tecta America, the magistrate judge followed the reasoning of Saffold and similarly found that the Jumara factors weighed heavily in favor of transfer to the Northern District of Illinois where Tecta America had its headquarters and Mr. Vitek resided.[2] (See Tecta America, Doc. No. 41, at 6-17.) Jacobsen argues that this Court's analysis should similarly result in transfer of this case to Georgia.

B.  Plaintiff's Arguments

Plaintiff argues that Jacobsen voluntarily and expressly consented to the forum selection clause in his employment agreements with CentiMark, not once, but twice.

---

[2]   Judge Bissoon declined to sever the claims against Mr. Hansen and send them to the Northern District of California where he resided, in large part because the complaint contained a civil conspiracy claim against all three defendants.  (Tecta America, Doc. No. 41 at 6, n. 8.)  That reasoning, of course, does not apply to this case.

(Plaintiff's Brief in Opposition to Defendant's Motion, Doc. No. 29, "Plf.'s Brief," at 1-4.) CentiMark contends that Jacobsen's motion should be denied because the employment agreements between the parties are valid and enforceable, venue is appropriate in this Court, and Jacobsen has failed to proffer any legitimate basis for the transfer. (Id. at 4-5.) Specifically, CentiMark argues that Jacobsen has failed to show that the forum selection clause is "unreasonable" as that term is analyzed in M/S Bremen inasmuch as he has not pointed to any aspects of fraud or overreaching by CentiMark when he signed the employment agreements in 1996 and 2004, despite the warnings in the "IMPORTANT NOTICE." Moreover, contrary to Jacobsen's litany of facts purporting to show that venue is more convenient and more appropriate in Georgia, there are countervailing facts which would support the conclusion that venue is at least as convenient and appropriate in this Court, specifically:

Jacobsen was well remunerated at CentiMark and, based on the letter from Nations Roof South offering him the position of President and an equity ownership in the company, is almost equally well paid in his new job;

Air travel between Pittsburgh and Atlanta is convenient, relatively inexpensive, and will be relatively rare, given the nature of the dispute and the availability of telephone conferences, videoconferencing, electronic filing of court documents, and other technologies;

Jacobsen has already engaged competent counsel in Pittsburgh who have vigorously defended his interests in this Court;

11

The evidence tends to show that Jacobsen's counsel are
being compensated by Nations Roof South, further
reducing the financial burden on him personally, and
he has not claimed it would be "financially
devastating" for him to litigate here; and

Jacobsen has not claimed any health, family,
professional or other reasons which would prevent him
from litigating in this forum.

(Plf.'s Brief at 6-8.)

CentiMark goes on to argue that not only is venue proper in
this Court, Jacobsen explicitly waived the defense of improper
venue by signing the two employment agreements. In addition,
the facts of this case are more similar to those of another,
more recent decision from this Court which denied a motion to
transfer venue than they are to Saffold and Tecta America. In
CentiMark Corp. v. Lavine, the Honorable Arthur J. Schwab
considered the Jumara factors and concluded that they, coupled
with a forum selection clause identical to that in the Jacobsen-
CentiMark agreements, weighed in favor of retaining jurisdiction
rather than transferring the case to Michigan as Lavine argued
should be done. See CentiMark v. Lavine, CA No. 11-757, 2011
U.S. Dist. LEXIS 78911 (W.D. Pa. July 20, 2011) ("Lavine.")[3]
(Plf.'s Brief at 8-12.)

---

[3] A significant difference between the arguments raised by the
defendants in these cases is that Lavine argued he was not subject to
personal jurisdiction in this Court and that the employment agreements
were contracts of adhesion. See Lavine, 2011 U.S. Dist. LEXIS 78911
at *7-*10. The Lavine court rejected both propositions. Although

12

C.   Discussion and Conclusion

As noted above, a court considering a motion to transfer venue engages in a two-step analysis. We first conclude that the Northern District of Georgia is, in fact, a forum in which this suit could have been brought. A potential transferee district has proper jurisdiction and venue if, when the action was commenced, "(i) venue was proper in the transferee district under 28 U.S.C. § 1391 and (ii) the transferee district could have exercised personal jurisdiction over the defendants." Days Inns Worldwide, Inc. v. Ram Lodging, LLC, CA No. 09-2275, 2010 U.S. Dist. LEXIS 37790, *8 (D. N.J. Apr. 14, 2010). Where jurisdiction is based solely on diversity of citizenship and an amount in controversy greater than the statutory minimum (as is the case here), CentiMark could have brought this action in the Northern District of Georgia inasmuch as Jacobsen, the only defendant, is a resident of that district and thus the federal courts could have exercised personal jurisdiction over him. See 28 U.S.C. § 1391(a).

"Venue will be considered proper in a diversity action where a substantial part of the events or omissions giving rise to the claim occurred in the transferee forum." Travelodge Hotels, Inc. v. Perry Developers, Inc., CA No. 11-1464, 2011

Jacobsen mentions in passing that he has no contacts with Pennsylvania in his "individual capacity," this argument is never developed.

U.S. Dist. LEXIS 134478, \*10 (D. N.J. Nov. 22, 2011), *citing* 28
U.S.C. § 1391(a)(2). The primary event giving rise to the
claims herein was Jacobsen's act of going to work for Nations
Roof South, an alleged competitor of CentiMark, in a position
which CentiMark claims violates the non-compete provision of his
Employment Agreement and raises the substantial likelihood that
he has, or will, misappropriate confidential CentiMark trade
secrets or other confidential information in violation of the
non-disclosure provision of that agreement. According to the
Complaint, this act took place in the Atlanta area, and thus the
Northern District of Georgia is a proper venue where the claim
could have been originally brought.

      1. *Analysis of the Jumara factors:* Turning to the
second phase of the analysis and setting aside for the moment
the effect of the forum selection clause in the 1996 Agreement,
we conclude the following with regard to the Jumara private
factors.

The parties' choices of forum counter-balance each other in
that Plaintiff seeks to litigate in the Western District of
Pennsylvania and Defendant in the Northern District of Georgia.

As noted above, the claim arose, to a great extent, in
Georgia, where Jacobsen was working at the time he terminated
his employment with CentiMark and went to work for Nations Roof
South, also located in Georgia, thereby allegedly violating the

14

restrictive covenants of his Employment Agreement. Thus, this factor weighs in favor of transfer.

The relative physical and financial condition of the parties is a neutral factor or, at best, weighs slightly in favor of transfer. CentiMark argues that the "facts strongly suggest" Nations Roof South is paying Jacobsen's litigation expenses, but provides no evidence to support that claim. As a nationwide corporation with purported profits of more than $404 million in 2009 (Motion, ¶ 10), CentiMark would be better prepared financially than almost any individual to litigate anywhere in the United States. To the best of the Court's knowledge, there are no physical restraints on the parties which would prevent litigating in either forum.

The convenience of witnesses is also a neutral factor. Jacobsen argues that he, Godwin, and employees of Nations Roof South who may be called as witnesses are all located in Georgia. On the other hand, CentiMark's senior management, including the chief executive officer and the company's legal and human resources staff (who could be called upon to testify, for example, about the content of the employment agreements) are located at its headquarters in Canonsburg, Pennsylvania. In the event Jacobsen's immediate supervisor would be called as a witness, appearing in either forum would be essentially neutral inasmuch as he is currently located in Colorado. There is no

15

evidence any potential witness would be unavailable for trial in either forum. *See* Jumara, 55 F.3d at 879 (this factor is relevant "only to the extent that the witnesses may *actually be* unavailable for trial in one of the fora.") (Emphasis added by the Court.)

Similarly, books and records of CentiMark are more than likely found in either forum, while those of Jacobsen and Nations Roof South are likely to be in Georgia. However, nothing has been offered to show that such records would be unavailable in either forum or that producing them in either forum would be "unduly burdensome or expensive." *See* Days Inns Worldwide, Inc., 2010 U.S. Dist. LEXIS 37790 at *19.

Turning to the public factors, we note that the parties have given little attention to these issues. First, neither has addressed the issue of the degree to which a judgment in its favor would be enforceable. We independently find no reason to believe this would be a significant factor and therefore give it no weight.

As for the practical considerations making the litigation easy, expeditious or inexpensive, this factor is again neutral. In short, whether the litigation proceeds in Pennsylvania or in Georgia, someone is going to have to travel somewhere. We agree with CentiMark that teleconferencing, video-depositions, and electronic filing are now ubiquitous. Thus we find this factor

has taken on less importance than it might have been given twenty years ago.

Neither party addresses the question of court congestion in this District as compared to that in the Northern District of Georgia and the Court independently knows of no reason the litigation would not proceed as quickly in one forum as in the other. We therefore give this factor no weight.

By contrast, the "local interest" factor weighs somewhat in favor of transfer to Georgia. Although CentiMark argues correctly that Pennsylvania has an interest in seeing that contracts executed in this Commonwealth are enforced, the controversy itself is local to Georgia. That is, Jacobsen worked for CentiMark in Georgia and still lives there. Were the non-compete provision of the Employment Agreement be enforced, he would be unable to continue to work for Nations Roof South, also located in Georgia. *See* Days Inns Worldwide, Inc., 2010 U.S. Dist. LEXIS 37790 at *20, concluding that the district which was the center of the parties' dispute had the stronger local interest in the outcome, even though both forums had an interest in deciding the breach of contract claim.

As for the public policy factor, again, the parties have not addressed this issue. The Court concludes that both Pennsylvania and Georgia would logically have an equal interest in protecting the legal rights of its residents. In such

situations, courts may conclude that the forum found to be "the center of gravity of the actions giving rise to the litigation" has the greater interest. *See*, e.g., Travelodge Hotels, Inc. v. Perry Developers, Inc., CA No. 11-1464, 2011 U.S. Dist. LEXIS 134478, *21 (D. N.J. Nov. 22, 2011). Following this reasoning, Georgia would have the greater interest and thus this factor favors transfer.

We reach the opposite result with regard to the final public factor, the familiarity of the trial court with the applicable state law. The forum selection clause also states that the agreement is to be "governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." Even if this clause did not appear in the 1996 Agreement or were found to be unenforceable, a Georgia court would be required to apply Pennsylvania law to the claims brought in this suit. *See* Van Dusen, 376 U.S. at 639 ("where the defendants seek transfer [under § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.") With all due respect to the Northern District of Georgia, this Court is probably more familiar with Pennsylvania law, particularly the Pennsylvania Uniform Trade Secrets Act under which Count II of the Complaint is brought. Thus, this factor weighs in favor of retaining jurisdiction in the Western District of Pennsylvania.

Taken *in toto*, we conclude that the Jumara factors weigh slightly – but by no means "strongly" –- in favor of transfer to Georgia.

2. *The effect of the forum selection clause:* A federal court sitting in diversity must apply federal rather than state law in determining the effect to be given to a contractual forum selection clause. Jumara, 55 F.3d at 877. While not dispositive, the "parties' private expression of their venue preferences" in a forum selection clause should be given "substantial consideration." Id. at 880. Under federal law, the party opposing the forum selection clause in an otherwise enforceable contract must show that

(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

MoneyGram Payment Sys. v. Consorcio Oriental, S.A., No. 01-4386, 2003 U.S. App. LEXIS 9875, *5 (3d Cir. May 21, 2003), *quoting* Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983).

Jacobsen has not argued that Section 7.06 of the employment agreement between himself and CentiMark, to which he agreed not once but twice, was the result of fraud or overreaching. He does not discuss the question of whether enforcing the clause,

19

thereby compelling him to litigate in this Court, would violate any strong public policy. In fact, his main argument is the claim that because he lives and works in Georgia, "it would be far more convenient for him to litigate" there. (Motion, ¶ 2.) He also argues, rather disingenuously in light of the two employment agreements he signed in 1996 and 2004, that he "had no reason to expect to be summoned into [Pennsylvania's] Courts." (Id., ¶ 10.) In his brief in support of his motion, he relies on Saffold and Tecta America, but ignores the more recent Lavine case. He has conceded in his brief that it would not be "financially devastating" for him to litigate in Pennsylvania, only that it would "work a financial hardship" on him to do so. (Def.'s Brief at 3.) His only other argument is that "all of the relevant witnesses, not just most of them, are located in Georgia." (Id.) We have already pointed out to the contrary that the CentiMark chief executive officer, as well as the company's human resources and legal of staff who figured to some degree in the events leading up to this litigation, are all located in Pennsylvania.

We conclude that Jacobsen has not come forth with facts which would show he would be effectively denied his day in court if he were to litigate in this forum; in fact, he has done so already. At best, he has argued that litigation in Georgia would be more convenient to him and that he might incur some

personal expense were he forced to litigate in Pennsylvania. These are insufficient to show that litigating here would be "gravely difficult and inconvenient." M/S Bremen, 407 U.S. at 18. Moreover, Jacobsen should have anticipated these factors when he signed the 1996 Agreement committing him to proceed in Western Pennsylvania. See Fuller Co. v. RDM Tech. BV, CA No. 99-1684, 1999 U.S. Dist. LEXIS 16460, *9-*10 (E.D. Pa. Oct. 15, 1999) (where an agreement between the parties contained a provision giving Pennsylvania courts "exclusive jurisdiction," the Dutch defendant company located in Rotterdam should have foreseen the inconvenience of litigating there at the time it entered into the agreement.)

Defendant's Motion is denied. An appropriate Order follows.

November  30 , 2011

_William L. Standish_
William L. Standish
United States District Judge

21